UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                **NOT FOR PUBLICATION**
-----------------------------------------------------------x
In re:                                                     Chapter 11

NORTHWEST AIRLINES CORPORATION, et al.,                    Case No. 05-17930 (ALG)

                                  Debtors.
-----------------------------------------------------------x
NORTHWEST AIRLINES, INC. and
NORTHWEST AIRLINES CORPORATION,

                                  Plaintiffs,             Adv. No. 07-03234 (ALG)

            -against-

FREDERICK N. BONDURANT, MALCOLM D.
CORNER, ROBERT F. HOLLIKER, MARK E.
KUNNEN, DAVID P. MATHISON AND
WILLIAM E. THOMPSON,
                                  Defendants.
-----------------------------------------------------------x

**MEMORANDUM OF OPINION**


A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for the Plaintiffs
   By:   Bruce R. Zirinsky, Esq.
         Gregory M. Petrick, Esq.
         Mark C. Ellenberg, Esq.
         Nathan A. Haynes, Esq.
One World Financial Center
New York, New York 10281

VAN COTT, BAGLEY, CORNWALL & McCARTHY, P.C.
Counsel for the Defendants
   By:   Gabrielle Lee Caruso, Esq.
36 South State Street, Suite 1900
Salt Lake City, Utah 84111-1478

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

On December 26, 2007, the above-captioned reorganized debtors (collectively, the "Debtors") filed an adversary proceeding and a motion for a preliminary injunction restraining the defendants (collectively, the "Pilots") from prosecuting an action they commenced in the State of Michigan. The Michigan action was brought against the Debtors, the Air Line Pilots Association ("ALPA"), and the Northwest Master Executive Council of ALPA (the "MEC"). The Debtors seek a preliminary injunction on the ground that the Pilots' Michigan claims against them had been discharged in the Debtors' First Amended Joint and Consolidated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan"), and that prosecution of the action would interfere with the implementation and consummation of the Plan. For the reasons stated below, the Court finds that the Debtors have shown a clear probability of success on the merits but that entry of an injunction will be postponed briefly, pending developments in Michigan.

I. Background

In the Michigan action, which was removed from the State to the Federal District Court for the Eastern District of Michigan, the Pilots, who were formerly employed by the Debtors and represented by ALPA, allege that ALPA violated its duty of fair representation, breached its contract, and violated the Michigan Elliot Larsen Civil Rights Act by discriminating against them based upon age with respect to the distribution of the proceeds of their claim in the Debtors' Chapter 11 cases (the "ALPA Claim"). The Pilots allege that the Debtors also violated the Michigan Elliot Larsen Civil Rights Act, stating ALPA was serving as the Debtors' "agent" in relation to the distributions, and that ALPA "conspired" with the Debtors with respect to the allegedly discriminatory apportionment.

2

The background to these claims is the following. On September 14, 2005, Northwest and the other Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code. On March 3, 2006, the Debtors and ALPA negotiated a modified collective bargaining agreement (the "ALPA CBA") to be submitted to ALPA's members for ratification. As part of the ALPA CBA, ALPA was granted a general unsecured claim against the Debtors in the amount of $888 million (the "ALPA Claim"); the claim was considered partial compensation for wage and benefit concessions embedded in the CBA. As set forth in § 7(a) of a letter of agreement (the "Bankruptcy Protection Letter") that was part of the ALPA settlement, ALPA's MEC was given the authority to determine the manner in which the ALPA Claim would be distributed to its members. On May 3, 2006 the pilots ratified the ALPA Restructuring Agreement. On June 13, 2006, this Court entered an order approving the ALPA CBA and authorizing the Debtors to enter into it (the "ALPA Order").

The Northwest Plan of Reorganization was confirmed on May 18, 2007. On the effective date of the Plan, May 31, 2007 (the "Effective Date"), the Debtors received a discharge under § 1141 of the Bankruptcy Code, and a discharge injunction was entered prohibiting all entities from interfering with the Plan and from asserting claims against the Debtors for matters that arose before the Effective Date of the Plan, except in accordance with the provisions of the Plan. Additionally, the Plan and Confirmation Order contain injunctive language relating to interference with implementation of the Plan. Section 11.5 of the Plan provides:

> Upon the entry of the Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from

3

>taking any actions to interfere with the implementation or consummation of the Plan.

Paragraph 35 of the Confirmation Order provides for the same relief.

Prior to the Effective Date of the Debtors' Plan, the Debtors and ALPA entered into two further agreements, approved by this Court on December 28, 2006 and March 8, 2007, respectively, which provided for the sale of an aggregate of 40% of the ALPA Claim to third parties. In accordance with the ALPA CBA, the cash from these sales was distributed based on the allocation determined by the MEC. Two such distributions were made in February and March 2007, both prior to the Effective Date of the Plan. The Pilots who brought the Michigan action allege that they appealed to the MEC for a greater proportion of the distributions, that their appeal was denied, and that the issue was the subject of a grievance proceeding, but their grievance was denied on May 18, 2007, also prior to the Plan Effective Date.

The record is not entirely clear concerning the timing of the distribution of the remaining 60% of the ALPA Claim. The Pilots' original Complaint alleges that such distributions were made in May 2007. In proceedings before this Court, they now allege that such distributions were made on or about June 11, 2007 and July 31, 2007, after the Effective Date. The Debtors do not dispute that the two final distributions were made in June and July 2007, but as further discussed below, contend that all material actions took place before the Effective Date.

In any event, the Pilots filed their Complaint against the Debtors, ALPA, and the MEC on November 12, 2007 in the Michigan Circuit Court and the case was subsequently removed to the Federal District Court. The Debtors have since filed a motion in the Michigan District Court to have those proceedings dismissed, or

4

alternatively, to transfer the case against them to this Court.  Oral argument on that motion is scheduled for March 12, 2008.

## II. Discussion

*A. Subject-Matter Jurisdiction*

In their response to the Debtors' motion for a preliminary injunction, the Pilots assert that this Court lacks "jurisdiction to issue a preliminary injunction."  (Memo, p. 10.)  They also contend that the issues are non-core and should be referred to the Michigan District Court.  Since the issue is one of jurisdiction, the Court turns to that matter first.

There is no basis for the argument that this Court lacks jurisdiction over the complaint filed by the Debtors.  After a Chapter 11 plan is confirmed, the Bankruptcy Court retains jurisdiction, to the extent provided for in the Plan, of matters that arise in the bankruptcy case or that are "related to" the bankruptcy case.  In particular, "*[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders,* particularly when disputes arise over a bankruptcy plan of reorganization."  *In re Millennium Seacarriers, Inc.*, 2005 WL 2398014 *7 (S.D.N.Y. 2005) (emphasis in original), citing *In re Millennium Seacarriers,* 419 F.3d 83, 96 (2d Cir. 2005); *see also Local Loan Co. v. Hunt*, 292 U.S. 489, 502 (1934) (courts have jurisdiction to interpret and enforce their own orders); *Continental Illinois National Bank v. Chicago,* 294 U.S. 648, 675 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a court of bankruptcy, as it is in a duly established court of equity."); *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) (post-confirmation jurisdiction of bankruptcy

5

court). The issue raised by the Debtors in the complaint is whether the Confirmation Order and the discharge injunction contained therein prohibit the Pilots from asserting the claims made in the Michigan Complaint. This plainly involves this Court's interpretation and enforcement of its own orders and a dispute over the effect of the Plan injunction.

A bankruptcy court not only retains post-confirmation jurisdiction to interpret and enforce its own orders, but "[t]he retention of jurisdiction by the bankruptcy court is particularly appropriate where, as here, the bankruptcy court expressly retains jurisdiction under the plan." *In re Chateaugay Corp.*, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996), citing *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). This Court has expressly done so. Paragraph EE of the Confirmation Order provides, "The Bankruptcy Court may properly retain jurisdiction over the matters set forth in section 13 of the Plan and section 1142 of the Bankruptcy Code." Section 13 of the Plan provides, in pertinent part, that this Court retains jurisdiction:

> (c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;
>
> (g) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;
>
> (j) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transaction or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;
>
> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

6

Notwithstanding the Pilots' further contention, the question whether they have violated the discharge injunction is a core proceeding. Core proceedings include, but are not limited to, "allowance or disallowance of claims against the estate," "confirmation of plans," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999) (internal citations omitted); *see also Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d at 229.

The instant proceeding is uniquely affected by the bankruptcy proceedings and directly affects a core bankruptcy function. Questions are raised as to the scope and effect of the discharge that the Debtors received in the Confirmation Order, which is the key order in any reorganization case. Moreover, the issues involve the Debtors' actions in carrying out other orders of this Court relating to the settlement of ALPA's claims and the distribution of the proceeds thereof.

This Court has core jurisdiction to resolve these issues. It turns to the issue whether the Debtors are entitled to a preliminary injunction.

*B. Preliminary Injunction Standard*

In order to obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7065 of the

7

Federal Rules of Bankruptcy Procedure, the party seeking relief must demonstrate (1) irreparable harm and (2) either (i) a likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits of the case and a balance of hardships tipping decidedly in the plaintiff's favor. *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d Cir. 1989); *Kaplan v. Bd. of Educ.,* 759 F.2d 256, 259 (2d Cir. 1985); *Local 553 Transport Workers v. Eastern Air Lines,* 695 F.2d 668, 675 n. 5 (2d Cir. 1982). The second issue will be considered first.

*(i) Likelihood of Success on Merits*

On the record before it, as a result of the injunctive language contained in the Plan and Confirmation Order, the Debtors have easily shown a likelihood of success on the merits of their claim that the Michigan Complaint violates the discharge injunction.

Section 11.2 of the Plan, relating to discharge of the Debtors, states, in relevant part:

> Except as provided in the Plan, on the Effective Date, *all existing* Equity Interests in NWA Corp. and *Claims against the Debtors,* including intercompany claims, *shall be*, and shall be deemed to be, *satisfied, discharged and terminated, and all holders of* Equity Interests in NWA Corp. and *Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any* other or further Equity Interest in NWA Corp. or *Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date* whether or not such holder has filed a proof of claim or proof of equity interest. (emphasis added)

In addition, ¶ 30 of the Confirmation Order states, in almost identical language:

> Pursuant to Section 11.2 of the Plan, except as provided in the Plan, on the Effective Date, all existing Equity Interests in NWA Corp and Claims against the Debtors, including Intercompany Claims, shall be, and shall be deemed to be, satisfied, discharged and terminated, and all holders of Equity Interests in NWA Corp.

8

> and Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Equity interest in NWA Corp. or Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest.

These provisions carry out § 1141(d)(1) of the Bankruptcy Code, which provides that "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation" and § 524(a)(2) of the Bankruptcy Code, which provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . ." Thus, "[a] discharge in bankruptcy operates as an injunction against collection of any discharged debts." *Kuhl v. United States*, 467 F.3d 145, 147 (2d Cir. 2006), citing 11 U.S.C. § 524(a)(2); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).

The Pilots base their claims against the Debtors in the Complaint upon the Debtors' alleged participation in a discriminatory distribution of the ALPA Claim proceeds through their alleged agent, ALPA. (Complaint ¶ 63.) Furthermore, the Debtors and ALPA are alleged to have worked in conjunction to cause the apportionment and disbursement of the ALPA Claim in a discriminatory manner. (Complaint ¶ 82.) The Michigan Complaint asserts, "The ALPA claim was distributed by the Defendant Union to the Plaintiffs and other NWA pilots in three parts: the first in February 2007, the second in March of 2007, and the third in May, 2007." (Complaint ¶ 26.) Based on the Pilots' own assertions, the claims asserted in the Michigan action plainly violate the

9

discharge injunction, which became effective on May 31, 2007.  Liability for pre-confirmation discriminatory actions is discharged.  *See Kresmery v. Serv. Am. Corp.*, 227 B.R. 10, 14 (D. Conn. 1998).

As noted above, the Pilots indicated in proceedings herein that they may disavow part of the Michigan Complaint.  They now state the dates on which the final distributions were made to the Pilots were June 11, 2007 and July 31, 2007, and that they "may amend their Complaint to set forth the precise dates of payment."  (Pilots Memo in Opposition to Debtors' Motion, ¶ 15 and n. 1.)  Since they have not yet moved to amend their Michigan Complaint, there is no need for speculation as to their ability to do so.  Moreover, the Michigan Complaint alleges that the material conduct charged as discriminatory took place before the Effective Date of the Plan.  Thus, the Michigan Complaint asserts that the formula for distributing the claim proceeds was determined before the Effective Date and that the affected Pilots protested and a grievance proceeding was commenced and dismissed – all before the Effective Date.  (Michigan Complaint ¶ 33.)  The Pilots' own allegations are that ALPA and the Debtors conspired against them well before May 31st.

At the hearing held before this Court on January 24, 2008, the Pilots made reference to the doctrine of "continuous discrimination," as part of their current effort to turn pre-confirmation into post-confirmation activities, but the doctrine is unlikely to help them.  The case of *Kresmery v. Serv. Am. Corp.*, 227 B.R. 10 (D. Conn. 1998), is instructive.  In that case, an employee alleged employment discrimination based on a disability; the employer subsequently filed for bankruptcy.  When the employee notified his employer that he intended to return to work, the employer informed him that there

10

was no work for him. The employer's plan was subsequently confirmed. The District Court held that the defendant's liability for employment discrimination that arose from plaintiff's claims of a pre-confirmation violation were discharged pursuant to § 1141(d) of the Bankruptcy Code and the language of the plan. The Court rejected the employee's argument that the employer's continued failure to rehire him after confirmation constituted ongoing discrimination, stating that his only claim arose from his termination and not from a failure to rehire, and that there was no evidence that the employer had "acted in any way other than to leave plaintiff's termination unchanged." *Id.* at 16. The Court relied on *United Air Lines, Inc. v. Evans*, 431 U.S. 552, 558 (1977), where the Supreme Court held that a continuing violation may not be based solely upon an employee's having suffered from the ongoing effects of an earlier discriminatory act. *See also McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739-740 (8th Cir. 1996).[1] Although it would be premature to reach the issue whether the Pilots should be able to amend their Complaint to assert that post-confirmation actions by the Debtors are actionable, Northwest has easily demonstrated that it has a likelihood of substantial success on the merits. Certainly, all of the allegations of the Michigan Complaint as it now exists (claiming only pre-May 31st discrimination) violate the discharge injunction.

The only case the Pilots cite, *O'Loghlin v. County of Orange*, 229 F.3d 871, 872 (9th Cir. 2000), is not on point. In that case, an employee of the Evaluation Treatment Service (ETS) in a psychiatric emergency facility brought an action against her employer, Orange County, under the Americans With Disabilities Act. The plaintiff had been injured on the job by a patient, and the Circuit Court noted that there were "*three*

---

[1] *See also* the recent Supreme Court case of *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169 (2007), which held that a new violation does not occur upon the occurrence of subsequent non-discriminatory acts that merely reflect adverse effects of the past discrimination.

11

*separate episodes* in which the County failed to accommodate the disability resulting from her injured arm." *Id.* at 873 (emphasis added.)  The Court's decision confirms that the plaintiff could not recover for any discrimination that took place before the County's discharge.[2]  It did not consider whether ministerial conduct that took place subsequent to the discharge was actionable and stated it was dealing with three separate episodes of discrimination.  For purposes of this motion, the Debtors have shown a substantial likelihood of success on the merits.

*(ii) Irreparable Harm*

In order to obtain a preliminary injunction, a litigant must ordinarily satisfy the second requirement noted above and demonstrate that it would suffer irreparable injury or its equivalent if injunctive relief were not granted.  The Debtors do not directly argue that they will suffer irreparable injury from the Pilots' case in Michigan but that they fall within an exception to the irreparable harm requirement under Rule 65, because the Pilots' Michigan action threatens the Debtors' reorganization and impairs this Court's jurisdiction with respect to the Chapter 11 case.  There is "a limited exception to the irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it." *Alert Holdings, Inc. v. Interstate Protective Services, Inc. (In re Alert Holdings, Inc.)*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); *see also Keene Corp. v. Acstar Insurance Co. (In re Keene Corp.)*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994).  "Where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the

---

[2] Orange County was in a Chapter 9 municipal bankruptcy case, but for purposes of the present analysis there are no material differences between a Chapter 9 and a Chapter 11 case.

12

reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief." *In re Alert Holdings,* 148 B.R. at 200. Although generally applied in the context of the automatic stay, this exception has been employed post-confirmation to enjoin actions against a reorganized debtor that plaintiffs commenced in a non-bankruptcy forum. *See In re Chateaugay Corp.*, 201 B.R. 48, 71-72 (Bankr. S.D.N.Y. 1996).

The Debtors argue that the Pilots' action impairs this Court's jurisdiction by violating the Confirmation Order, specifically those provisions that prohibit the pursuit of discharged claims, and that it interferes with the implementation and consummation of the plan. The Debtors further argue that the Pilots' action threatens the success of the Debtors' reorganization because it obstructs the distribution of the ALPA Claim and interferes with the ALPA Restructuring CBA, and that if the Pilots are not enjoined from continuing their action in Michigan, other parties dissatisfied with their distributive allocations will also be encouraged to litigate in non-bankruptcy courts.

In making these arguments, the Debtors rely on *In re Chateaugay*, 201 B.R. at 71-72, in which the irreparable harm requirement was dispensed with and State court actions enjoined. As the Court said in that case, "In asserting these claims, Defendants are directly attacking the propriety of the Plan and this Court's order, as well as the integrity of the Debtors' chapter 11 cases. Defendants are also directly attacking the discharge and injunctive provisions of the Plan and Confirmation Order which are at the very heart of the bankruptcy process." *Id.* The Court added that the bankruptcy courts are in the best position to determine the validity and effect of their own orders. *Id.*[3]

---

[3] There are cases that hold that when issuing an injunction, "the threat to the reorganization process must be imminent, substantial and irreparable." *Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365

13

This adversary proceeding is similar to the *Chateaugay* case in that the Debtors are being sued post-confirmation in a non-bankruptcy forum over an issue involving the scope and effect of the Confirmation Order and the Debtors have shown strong grounds for the issuance of an injunction, but there is one difference. In *Chateaugay*, the debtor sought an injunction against plaintiffs who had asserted product liability claims in multiple State courts relying on the argument that the Bankruptcy Court's sale order was induced by fraud. *In re Chateaugay*, 201 B.R. at 58. The Michigan Action is now pending before a Federal District Court there. The Debtors have moved to dismiss or to transfer that case against them to this Court, and the matter is fully briefed. If this Court were to issue an injunction today, it would effectively prevent the Pilots from appearing in the Michigan case and impede the District Court in Michigan in deciding the motions before it. Unlike the multiple product liability cases at issue in *Chateaugay*, the Michigan case involves a discrete dispute. Under the circumstances, taking all the equities into account, this Court will delay entry of injunctive relief at this time so as not to interfere with the jurisdiction of the Michigan Court. Once the Michigan Court has acted, the Debtors are directed to settle an appropriate order on 10 days' notice to the Pilots, and the Pilots may of course respond.

In any event, the adversary proceeding will remain pending. The Debtors also remain free to renew their motion for a preliminary injunction, if necessary, and the Debtors also retain any claims for damages they may have against the Pilots.

---

B.R. 401, 409-410 (S.D.N.Y. 2007), citing *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc.*, 2006 U.S. Dist. Lexis 92499 at *13 (S.D.N.Y. Dec. 20, 2006). However, the circumstances of this case are distinguishable. In the cited cases the debtors were attempting to obtain a stay of litigation brought against third parties. The issue before this Court relates to the scope of the Debtors' own discharge.

14

<u>IV. Conclusion</u>

For the reasons set forth above, the Debtors' motion for a preliminary injunction is granted, but relief is postponed. The Debtors are directed to settle an order on 10 days' notice after the Michigan Court has acted.

Dated: New York, New York
       March 5, 2008

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE